■ In the Matter of KENNETH QQ. and Others, Neglected Children. DELAWARE COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; JODI QQ., Appellant. [909 NYS2d 585]—

Egan Jr., J. Appeal from an order of the Family Court of Delaware County (Lambert, J.), entered September 10, 2009, which, in a proceeding pursuant to Family Ct Act article 10, granted petitioner's motion to modify a prior order of disposition.

In April 2009, respondent consented, without admission, to a determination that she neglected her three sons (born in 1991, 1993 and 1995) on the basis of their homelessness, and Schoharie County Family Court (James, J.) continued custody with respondent under the supervision of petitioner for one year. Family Court also ordered that respondent comply with certain terms and conditions including, among others, that she

cooperate with petitioner and the children receive appropriate psychiatric treatment. In August 2009, petitioner moved, pursuant to Family Ct Act § 1061, to modify the dispositional order, alleging that respondent was not complying with its terms and conditions with respect to her youngest son (hereinafter the child), who was diagnosed with bipolar disorder, oppositional defiant disorder and attention deficit disorder. Following a transfer of the proceeding from Schoharie County to Delaware County and an ensuing fact-finding hearing, Family Court (Lambert, J.) modified the dispositional order and placed the child in the care of petitioner on the basis that respondent failed to follow through with petitioner's recommendations, repeatedly canceled meetings, refused to take responsibility for the child's actions and his lack of supervision, and failed to meet his mental health needs. Respondent now appeals.

As an initial matter, we reject petitioner's argument that respondent's appeal is moot because, at an April 2010 permanency hearing, respondent consented to continued placement of the child in foster care. Because an order placing a child in foster care may affect a parent's status or parental rights in potential future proceedings, respondent's appeal from the September 2009 order is not moot (*see Matter of Brandon DD. [Jessica EE.]*, 74 AD3d 1435, 1437 n 2 [2010]).

Turning to the merits of respondent's appeal, pursuant to Family Ct Act § 1061, a dispositional order may be modified when there exists good cause to do so (*see* Family Ct Act § 1061; *Matter of Carrie F. v David PP.*, 34 AD3d 1108, 1109 [2006]; *Matter of Amber VV.*, 19 AD3d 767, 769 [2005]; *Matter of Angelina AA.*, 222 AD2d 967, 969 [1995]). This section " 'expresses the strong [l]egislative policy in favor of continuing Family Court jurisdiction over the child and family so that the court can do what is necessary in the furtherance of the child's welfare' " (*Matter of Angelina AA.*, 222 AD2d at 968-969, quoting Besharov, Practice Commentary, McKinney's Cons Laws of NY, Book 29A, Family Ct Act § 1061, at 461). As with an initial order, the modified order "must reflect a resolution consistent with the best interests of the children after consideration of all relevant facts and circumstances, and must be supported by a sound and substantial basis in the record" (*Matter of Elijah Q.*, 36 AD3d 974, 976 [2007] [internal quotation marks and citation omitted], *lv denied* 8 NY3d 809 [2007]; *accord Matter of Brandon DD. [Jessica EE.]*, 74 AD3d at 1437).

The evidence at the dispositional hearing established that respondent failed to attend two scheduled meetings with petitioner and then failed to contact them as promised to reschedule the

meetings. In July 2009, respondent left the child under his aunt's supervision while she went to Long Island to receive medical treatment and attend a court appearance. While she was away, the child was involved in an incident at a neighborhood pool with an 11-year-old girl that escalated to his using expletives directed to the girl's father and threatening to assault the girl. After the child motioned that he was about to strike the girl, her father restrained him. The child then ran away and returned with, in succession, a golf club, baseball bat and knife, and was each time disarmed by adults. The child then threw a rock at the father's car and, while awaiting the arrival of police, threatened to kill the 11-year-old girl and rape her sister. When a caseworker responded to the family home in response to reports of this incident and began a discussion with the child and his aunt of a possible safety plan, the child stated that he would not agree to it. When the caseworker then spoke with respondent by telephone in Long Island, the child began to scream, whereupon respondent informed the caseworker to tell him to "shut the f . . . up." The child then became verbally abusive to the caseworker, started to come at her and had to be restrained. During a subsequent meeting with caseworkers in August, the child hurled an expletive at the caseworkers present and stormed out of the meeting, at which point respondent announced the meeting was over and left herself. Under these circumstances, and according deference to Family Court's credibility determinations (*see Matter of Stefani C.*, 61 AD3d 681, 681 [2009]; *Matter of Jolyssa EE.*, 28 AD3d 824, 825 n [2006]), we find that temporary placement with petitioner was in the child's best interest.

Mercure, J.P., Malone Jr., McCarthy and Garry, JJ., concur. Ordered that the order is affirmed, without costs.